**MOTLEY RICE LLC**
William H. Narwold (*pro hac vice*)
bnarwold@motleyrice.com
One Corporate Center
20 Church St., 17th Floor
Hartford, CT  06103
Telephone: (860) 882-1681
Facsimile: (860) 882-1682

**MOTLEY RICE LLC**
Gregg S. Levin (*pro hac vice*)
glevin@motleyrice.com
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450

*Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| LINUS ARULIAH, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IMPAX LABORATORIES, INC., LARRY HSU, G. FREDERICK WILKINSON, and BRYAN M. REASONS,<br><br>Defendants. | **No. 3:14-cv-03673-JD**<br><br>**NOTICE OF MOTION AND LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:          Hon. James Donato<br>Dept.:          Courtroom 11<br>Hearing Date:  April 22, 2015<br>Hearing Time: 10:00 a.m. |

Notice of Mot. & Lead Pl.'s Unopposed Mot. for Prelim. Approval of
Proposed Class Action Settlement & Mem. of P. & A. in Supp. Thereof
Case No. 3:14-cv-03673-JD

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

NOTICE OF MOTION AND MOTION ................................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED ..................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 2

I.  PRELIMINARY STATEMENT ..................................................................................... 2

II.  FACTUAL AND PROCEDURAL BACKGROUND ................................................... 2

III.  PRELIMINARY CLASS CERTIFICATION IS NECESSARY AND APPROPRIATE FOR SETTLEMENT PURPOSES ...................................................................................................... 3

    A.  The Settlement Class Meets the Requirements of Rule 23(a) ......................... 3

        1.  Rule 23(a)(1):  Numerosity ...................................................... 3

        2.  Rule 23(a)(2):  Questions of Law or Fact Are Common ...................... 4

        3.  Rule 23(a)(3):  Lead Plaintiff's Claims Are Typical ........................... 4

        4.  Rule 23(a)(4):  The Lead Plaintiffs Are Adequate ............................ 5

    B.  Rule 23(b)(3):  Common Questions of Law or Fact Predominate and a Class Action Is the Superior Method of Adjudication ........................... 6

IV.  THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ..................... 7

    A.  Legal Standard for Preliminary Approval ...................................... 7

    B.  The Settlement Is the Result of a Thorough, Rigorous, and Arm's-Length Process ........ 8

    C.  The Strength of Lead Plaintiff's Case Favors Approval ............................ 8

    D.  The Risk, Expense, Complexity, and Likely Duration of Further Litigation Favor Approval ........ 9

    E.  The Stage of Proceedings Favors Approval ................................... 10

    F.  The Amount Offered in Settlement Favors Approval ......................... 12

    G.  The Experience and Views of Counsel Favor Approval ...................... 12

V.  THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AS WELL AS DUE PROCESS REQUIREMENTS ................................................................................................... 13

VI.  PROPOSED SCHEDULE OF EVENTS ................................................................ 15

VII.  CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

## CASES

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997) .................................................................................................... 3, 6

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ............................................................................................. 4

*Ching v. Siemens Industry, Inc.*,
No. C 11-4838 MEJ, 2013 WL 6200190 (N.D. Cal. Nov. 27, 2013).................................. 14

*Churchill Village, L.L.C. v. General Electric*,
361 F.3d. 566 (9th Cir. 2004) ........................................................................................... 9

*Clesceri v. Beach City Investigations & Protective Services*,
No. CV-10-3873-JST (RZx), 2011 WL 320998 (C.D. Cal. Jan. 27, 2011) ......................... 9

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ......................................................................................................... 3

*Evans v. Linden Research, Inc.*,
No. C-11-01078 DMR, 2014 WL 1724891 (N.D. Cal. Apr. 29, 2014) ............................... 14

*Glass v. UBS Financial Services, Inc.*,
No. C 06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007).................................... 11

*Grant v. Capital Management Services, L.P.*,
No. 10-cv-2471-WQH (BGS), 2013 WL 6499698 (S.D. Cal. Dec. 11, 2013) .................... 7

*Hanlon v. Chrysler Corp*,
150 F.3d 1011 (9th Cir. 1998) ................................................................................. 3, 4, 5, 6

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ............................................................................................. 5

*In re AT&T Mobility Wireless Data Services Sales Tax Litigation*,
789 F. Supp. 2d 935 (N.D. Ill. 2011)................................................................................. 11

*In re Cooper Cos. Securities Litigation*,
254 F.R.D. 628 (C.D. Cal. 2009)........................................................................................ 6

*In re Critical Path, Inc.*,
No. C 01-00551 WHA, 2002 WL 32627559 (N.D. Cal. June 18, 2002) ........................... 10

*In re Haier Freezer Consumer Litigation*,
No. 5:11-CV-02911-EJD, 2013 WL 2237890 (N.D. Cal. May 21, 2013 ............................ 7

*In re Immune Response Securities Litigation*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................................................. 12

*In re Independent Energy Holdings PLC Securities Litigation*,
No. 00 Civ. 6689(SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)........................... 8

*In re Infineon Technologies AG Securities Litigation*,
266 F.R.D. 386 (N.D. Cal. 2009) ....................................................................................... 4

NOTICE OF MOT. & LEAD PL.'S UNOPPOSED MOT. FOR PRELIM. APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT & MEM. OF P. & A. IN SUPP. THEREOF
Case No. 3:14-cv-03673-JD

ii

*In re Intelcom Group, Inc. Securities Litigation*,
   169 F.R.D. 142 (D. Colo. 1996) ........................................................................ 6

*In re LDK Solar Securities Litigation*,
   255 F.R.D. 519 (N.D. Cal. 2009) ...................................................................... 4

*In re Mego Financial Corp. Securities Litigation*,
   213 F.3d 454 (9th Cir. 2000) ..................................................................... 5, 10

*In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*,
   No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ........................... 12

*In re NVIDIA Corp. Securities Litigation*,
   768 F.3d 1046 (9th Cir. 2014) ...................................................................... 10

*In re Omnivision Technologies, Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................................................... 12, 13

*In re Portal Software, Inc. Securities Litigation*,
   No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ............................ 8

*In re Prudential Insurance Co. of America Sales Practices Litigation*,
   962 F. Supp. 450 (D.N.J. 1997) .................................................................... 11

*In re Veritas Software Corp. Securities Litigation*,
   496 F.3d 962 (9th Cir. 2007) ...................................................................... 13

*In re Washington Public Power Supply System Securities Litigation*,
   MDL No. 551, 1988 WL 158947 (W.D. Wash. July 28, 1988) ................................. 10

*In re Wireless Facilities, Inc. Securities Litigation*,
   253 F.R.D. 630 (S.D. Cal. 2008) .................................................................. 13

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ...................................................................... 10

*Knight v. Red Door Salons, Inc.*,
   No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ............................... 12

*Knutson v. Schwan's Home Service, Inc.*,
   No. 3:12-cv-00964-GPC-DHB, 2014 WL 3519064 (S.D. Cal. July 14, 2014) ............... 14

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ...................................................................... 13

*Livingston v. Toyota Motor Sales USA, Inc.*,
   No. C-94-1377-MHP, 1995 U.S. Dist. LEXIS 21757 (N.D. Cal. June 1, 1995) ............... 9

*McPhail v. First Command Financial Planning, Inc.*,
   247 F.R.D. 598 (S.D. Cal. 2007) ................................................................... 6

*Negrete v. Allianz Life Insurance Co. of North America*,
   238 F.R.D. 482 (C.D. Cal. 2006) ................................................................... 6

*Nelson v. Bennett*,
   662 F. Supp. 1324 (E.D. Cal. 1987) ............................................................... 7

NOTICE OF MOT. & LEAD PL.'S UNOPPOSED MOT. FOR PRELIM. APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT & MEM. OF P. & A. IN SUPP. THEREOF
Case No. 3:14-cv-03673-JD

iii

*Officers for Justice v. Civil Service Commission of City & County of San Francisco*,
688 F.2d 615 (9th Cir. 1988) ................................................................................ 12

*Oregon Public Employees Retirement Fund v. Apollo Group Inc.*,
774 F.3d 598 (9th Cir. 2014) ................................................................................ 10

*Orvis v. Spokane County*,
281 F.R.D. 469 (E.D. Wash. 2012) ........................................................................ 9

*Police Retirement System of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) .............................................................................. 10

*Redwen v. Sino Clean Energy, Inc.*,
No. CV 11-3936 PA (SSx), 2013 U.S. Dist. LEXIS 100275 (C.D. Cal. July 9, 2013) ............... 11, 14

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) ................................................................................ 4

*Rodriguez v. West Publishing Corp.*,
563 F.3d 948 (9th Cir. 2009) ................................................................................ 13

*Satchell v. Federal Express Corp.*,
No. C03-2659 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ........................................ 8

*Susquehanna Corp. v. Korholz*,
84 F.R.D. 316 (N.D. Ill. 1979) .............................................................................. 10

*Weeks v. Kellogg Co.*,
No. CV 09-08102(MMM)(RZx), 2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ........................ 9

*West v. Circle K Stores, Inc.*,
No. S-04-0438 WBS GGH, 2006 WL 1652598 (E.D. Cal. June 13, 2006) ............................... 7

*Young v. Polo Retail, LLC*,
No. C-02-4546 VRW, 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ................................. 7, 8

**RULES**

Fed. R. Civ. P. 23(a)(1) ........................................................................................ 3

Fed. R. Civ. P. 23(a)(2) ........................................................................................ 4

Fed. R. Civ. P. 23(a)(3) ........................................................................................ 4

Fed. R. Civ. P. 23(a)(4) ........................................................................................ 5

Fed. R. Civ. P. 23(b)(3) ........................................................................................ 6

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................. 13

**TREATISES**

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice &
Procedure* § 1778 (2d ed. 1986) ............................................................................ 6

*Manual for Complex Litigation, Second* (1985) ........................................................ 8

NOTICE OF MOT. & LEAD PL.'S UNOPPOSED MOT. FOR PRELIM. APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT & MEM. OF P. & A. IN SUPP. THEREOF
Case No. 3:14-cv-03673-JD

iv

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that Lead Plaintiff KBC Asset Management NV ("KBC" or "Lead Plaintiff") hereby moves for an order:  (1) provisionally certifying the Class[1] for settlement purposes; (2) preliminarily approving the proposed Settlement set forth in the Stipulation; (3) approving the Notice to the Class and authorizing the dissemination of the Notice to Class Members; (4) setting dates and procedures for the Settlement Fairness Hearing on the proposed Settlement; (5) setting forth procedures and deadlines for Class Members to file objections to the proposed Settlement; and (6) setting forth procedures and deadlines for Class Members to request exclusion (opt out) from the Class.  This motion is scheduled to be heard at 10:00 a.m. on April 22, 2015, in the courtroom of the Honorable James Donato, in the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California.  This motion is unopposed and is based on this notice and motion, the accompanying memorandum of points and authorities, the Levin Declaration, the Stipulation and attached exhibits, all prior pleadings in this Action, and such additional evidence or argument as may be required by this Court.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Class should be provisionally certified for purposes of Settlement.

2.      Whether the proposed Settlement should be preliminarily approved.

3.      Whether the proposed form and manner of Notice to the Class should be approved.

---

[1] All capitalized terms not defined herein shall have those meanings as set forth in the Stipulation of Settlement ("Stipulation"), a true and correct copy of which is attached as Exhibit 1 to the Declaration of Gregg S. Levin in Support of Preliminary Approval of Proposed Class Action Settlement ("Levin Declaration").  The Stipulation includes the following exhibits:  Exhibit A, the Notice of (i) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (ii) Settlement Fairness Hearing; and (iii) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Notice"); Exhibit B, the [Proposed] Order and Final Judgment of Dismissal with Prejudice ("Judgment"); Exhibit C, the [Proposed] Order Preliminarily Approving Settlement, Certifying Settlement Class and Providing for Notice of Settlement ("Preliminary Order"); Exhibit D, the Proof of Claim and Release Form ("Proof of Claim"); and Exhibit E, the Summary Notice of (i) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (ii) Settlement Fairness Hearing; and (iii) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Summary Notice") for publication.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  PRELIMINARY STATEMENT

Lead Plaintiff and Defendants[2] (the "Parties") have negotiated at arm's-length and reached a proposed Settlement of all claims brought on behalf of all persons and entities who purchased or otherwise acquired the publicly traded common stock of Impax during the Class Period[3] for payment of $4,750,000 (Four Million Seven Hundred Fifty Thousand Dollars).  The proposed Settlement would result in the complete and final resolution of all claims and defenses as to all Parties in this federal securities law class action.  In reaching the proposed Settlement, Lead Plaintiff is fully informed of the strengths and weaknesses of its claims, having had the opportunity to engage, through counsel, in an extensive investigation prior to and during the prosecution and mediation of the Action.  Lead Plaintiff appreciates the complex and highly uncertain nature of proceeding with the Action and eventually trying this case before a jury, and is mindful of the difficulties of proof associated with, and possible defenses to, the securities fraud violations that it alleged.  Lead Plaintiff recognized that, even if it were to overcome Defendants' forthcoming motion to dismiss and then prevail at summary judgment and trial, Defendants likely would appeal any favorable judgment, delaying and possibly jeopardizing any recovery.  Accordingly, Lead Plaintiff respectfully submits that the Settlement is in the best interests of the Class, represents a significant recovery, and merits preliminary approval.  As explained below, the Court also should provisionally certify the Class for settlement purposes.

### II.  FACTUAL AND PROCEDURAL BACKGROUND

The original securities class action complaint was filed on August 13, 2014, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder in connection with Impax's violations of the U.S. Food and Drug Administration's current good manufacturing practices ("cGMP") regulations.  On November 19, 2014, the Court held a hearing at which it appointed KBC as Lead Plaintiff pursuant to the requirements of the Private Securities Litigation Reform Act of 1995, 15 U.S.C § 78u-4 (the "PSLRA"), appointed

---

[2] Defendants are Impax Laboratories, Inc. ("Impax" or the "Company"), Larry Hsu, G. Frederick Wilkinson, and Bryan M. Reasons.

[3] The Class Period is March 6, 2013, to August 1, 2014, inclusive.

NOTICE OF MOT. & LEAD PL.'S UNOPPOSED MOT. FOR PRELIM. APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT & MEM. OF P. & A. IN SUPP. THEREOF
Case No. 3:14-cv-03673-JD

2

William H. Narwold and Gregg S. Levin of Motley Rice LLC as Lead Counsel, directed the Parties to conduct Settlement discussions at their earliest opportunity, and ordered Lead Plaintiff to file an amended complaint within twenty-one days.  On December 10, 2014, Lead Plaintiff filed its Amended Class Action Complaint for Violations of the Federal Securities Laws, ECF No. 48 (the "Complaint"), alleging violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5.[4]

On December 22, 2014, the Parties participated in a full-day formal mediation conducted by the Honorable Layn R. Phillips (Ret.).  As a result of this mediation, on January 13, 2015, the Parties reached an agreement-in-principle to settle the Action.  The terms of the Settlement are set forth in the Stipulation.

### III.   PRELIMINARY CLASS CERTIFICATION IS NECESSARY AND APPROPRIATE FOR SETTLEMENT PURPOSES

One of the Court's duties in reviewing a proposed settlement of a class action is to determine whether the action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  For the Court to certify a class under Rule 23(a), the Court must find that the requirements of "(1) numerosity,  (2) commonality, (3) typicality, and (4) adequacy of representation" are met.  *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1019 (9th Cir. 1998).  The Action also must meet one of the prerequisites of Rule 23(b).  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 163 (1974).  Lead Plaintiff respectfully submits that the Class satisfies each of those requirements.

### A.   The Settlement Class Meets the Requirements of Rule 23(a)

#### 1.   Rule 23(a)(1):  Numerosity

Rule 23(a) requires the plaintiff to demonstrate that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, during the Class Period, Impax had between 68,460,000 and 70,069,000 shares outstanding and a public equity float of between 64,416,000 and 65,991,000 shares actively trading on the NASDAQ stock market.  ¶ 214.  These shares were bought and owned by hundreds, if not thousands, of individual shareholders.  Accordingly, the numerosity requirement of Rule 23(a) is clearly satisfied because "'the class is so large that joinder of

---

[4] Unless otherwise stated, all citations herein to "¶ __" are to paragraphs of the Complaint.

all members is impracticable.'" *Hanlon*, 150 F.3d at 1019; *see also In re Infineon Techs. AG Sec. Litig.*, 266 F.R.D. 386, 393 (N.D. Cal. 2009) (finding numerosity where "the weekly volume of trading . . . was frequently in the millions" and the class was presumed to have potentially thousands of members).

### 2.       Rule 23(a)(2):  Questions of Law or Fact Are Common

A class has sufficient commonality if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  This rule "has been construed permissively.  All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019; *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010).  In other words, there may be varying fact situations among individual members of the class so long as the claims of the plaintiffs and other class members are based on the same legal or remedial theory. *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

In this case, common questions of both law and fact abound.  The central questions—whether Defendants' public statements were false or material and whether Defendants acted with the requisite mental state—are the same for all class members.

### 3.       Rule 23(a)(3):  Lead Plaintiff's Claims Are Typical

The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Hayes*, 591 F.3d at 1124 (quoting *Hanlon*, 150 F.3d at 1020). Consequently, differences in the amount of damages, size, or manner of purchase or holding and the nature of the purchase or holding are insufficient to overcome class certification. *See In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 529 (N.D. Cal. 2009) (certifying the class and holding that "potential complications in the calculation of damages" do "'not defeat'" class certification (quoting *Blackie*, 524 F.2d at 905)).

Notice of Mot. & Lead Pl.'s Unopposed Mot. for Prelim. Approval of
Proposed Class Action Settlement & Mem. of P. & A. in Supp. Thereof
Case No. 3:14-cv-03673-JD

4

Here, Lead Plaintiff's claims are "typical" of those of the other Class Members because they have similar legal arguments that arise out of the same alleged course of events. The Ninth Circuit has stated that the test for typicality "'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). Lead Plaintiff alleged that it was injured, like the other Class Members, by purchasing and/or acquiring Impax common stock at prices that were inflated due to Defendants' materially false and misleading statements issued during the Class Period—misconduct that is not unique to Lead Plaintiff. Lead Plaintiff also meets the standard for typicality because "[t]he purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Id*. Lead Plaintiff's claims are "typical" because its interests are representative of the interests of the Class.

### 4.   Rule 23(a)(4):  The Lead Plaintiffs Are Adequate

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The proper resolution of this issue requires that two questions be addressed:  (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

Here, Lead Plaintiff is a sophisticated institutional investor who has and will continue to represent the interests of the Class fairly and adequately. There is no antagonism or conflict of interest between Lead Plaintiffs and the Class. Lead Plaintiff and Members of the Class share the common objective of maximizing their recovery from Defendants when considering the totality of the relevant circumstances.

In addition, Lead Counsel and the other members of their law firm have extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States. *See* Motley Rice LLC's Shareholder and Securities Fraud Resume ("Firm Resume"), attached as Ex. 2 to the Levin Decl.

Notice of Mot. & Lead Pl.'s Unopposed Mot. for Prelim. Approval of       5
Proposed Class Action Settlement & Mem. of P. & A. in Supp. Thereof
Case No. 3:14-cv-03673-JD

1

**B.      Rule 23(b)(3):  Common Questions of Law or Fact Predominate and a Class Action Is the Superior Method of Adjudication**

2

3          Rule 23(b)(3) sets forth two requirements, the first being that the "questions of law or fact

4   common to class members predominate over any questions affecting only individual members."  Fed.

5   R. Civ. P. 23(b)(3).   The predominance inquiry "tests whether proposed classes are sufficiently

6   cohesive to warrant adjudication by representation."  *Amchem Prods.*, 521 U.S. at 623.   "'When

7   common questions present a significant aspect of the case and they can be resolved for all members of

8   the class in a single adjudication, there is clear justification for handling the dispute on a representative

9   rather than on an individual basis.'"  *Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan Wright,

10  Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed. 1986)).   The

11  predominance requirement is "readily met" in securities class actions.  *Amchem Prods.*, 521 U.S. at

12  625; *see also In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 632 (C.D. Cal. 2009) ("[S]ecurities fraud

    cases fit Rule 23 'like a glove.'") (citation omitted).

13         Here, common questions of law and fact predominate over individual questions because

14  Defendants' alleged fraudulent statements and omissions affected all Class Members in the same

15  manner (i.e., through public statements made to the market and documents publicly filed with the

16  U.S. Securities and Exchange Commission).   Predominance of common questions generally will be

17  found when, as here, "'many purchasers have been defrauded over time by similar misrepresentations,

18  or by a common scheme to which alleged non-disclosures related.'"  *Negrete v. Allianz Life Ins. Co. of*

19  *N. Am.*, 238 F.R.D. 482, 492 (C.D. Cal. 2006) (citation omitted).

20         Likewise, little question exists that a class action is superior to other available methods for

21  litigation, as "the superiority of class actions in large securities fraud [matters] is well recognized."  *In*

22  *re Intelcom Grp., Inc. Sec. Litig.*, 169 F.R.D. 142, 149 (D. Colo. 1996); *see also McPhail v. First*

23  *Command Fin. Planning, Inc.*, 247 F.R.D. 598, 615 (S.D. Cal. 2007) (noting "class action is the

24  superior method for fair and efficient adjudication" because individual suits "would 'clog [ ] the federal

25  courts with innumerable individual suits litigating the same issues repeatedly'"; the "plaintiffs assert

26  complex claims which will be very costly to litigate"; and each claim is for "a relatively small amount")

27  (alteration in original) (citations omitted).

28

Notice of Mot. & Lead Pl.'s Unopposed Mot. for Prelim. Approval of                                                6
Proposed Class Action Settlement & Mem. of P. & A. in Supp. Thereof
Case No. 3:14-cv-03673-JD

In sum, the requirements of Rule 23(a) and (b) are satisfied and the Court should provisionally certify the proposed Class for settlement purposes and appoint Lead Plaintiff as the class representative.

## IV. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A. Legal Standard for Preliminary Approval

As a matter of public policy, settlement is a strongly favored method for resolving disputes, especially in complex class actions. *See, e.g.*, *Grant v. Capital Mgmt. Servs., L.P.*, No. 10-cv-2471-WQH (BGS), 2013 WL 6499698, at *2 (S.D. Cal. Dec. 11, 2013) ("'Voluntary conciliation and settlement are the preferred means of dispute resolution in complex class action litigation.'") (citation omitted). The settlement of complex cases such as this one greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of justice. *See, e.g.*, *Nelson v. Bennett*, 662 F. Supp. 1324, 1334 (E.D. Cal. 1987) ("[F]ederal courts long recognized the public policy in favor of the settlement of complex securities actions, . . . [e]specially in these days of burgeoning federal litigation, the promotion of settlements is, as a practical matter, an absolute necessity.").

Federal Rule of Civil Procedure 23 requires court approval for any settlement of a class action. Approval of class action settlements normally proceeds in two stages: (i) preliminary approval, followed by notice to the class; and (ii) final approval. *See, e.g.*, *West v. Circle K Stores, Inc.*, No. S-04-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006). By this motion, Lead Plaintiff requests that the Court take the first step in the approval process: preliminary approval of the Settlement. A court "'need not conduct a full settlement fairness appraisal before granting preliminary approval.'" *Grant*, 2013 WL 6499698, at *5 (citation omitted). "If the court preliminarily certifies the class and finds the proposed settlement fair to its members, the court schedules a fairness hearing where it will make a final determination of the class settlement." *In re Haier Freezer Consumer Litig.*, No. 5:11-CV-02911-EJD, 2013 WL 2237890, at *3 (N.D. Cal. May 21, 2013).

The preliminary approval standard involves "both a procedural and a substantive component." *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006). As the court in *Young* explained:

> "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within

the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing."

*Id.* (quoting *Manual for Complex Litigation, Second* § 30.44 (1985)) (alteration in original).  Applying these standards, the Settlement should be preliminarily approved.

### B.    The Settlement Is the Result of a Thorough, Rigorous, and Arm's-Length Process

There is an initial presumption that a proposed settlement is fair and reasonable when it is the "product of arm's-length negotiations."  *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007).  Courts also have recognized that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

Here, the Settlement was achieved only after an intense arm's-length mediation conference and follow-up communications with Judge Phillips, an experienced mediator with considerable knowledge, experience, and expertise in the field of federal securities law.  Before and during the mediation conference, the Parties explored the strengths and weaknesses of Lead Plaintiff's and Defendants' respective claims and defenses with Judge Phillips.  The Parties focused on Lead Plaintiff's ability to adequately allege and ultimately prove falsity, scienter, loss causation, and damages.  With an informed understanding of these various issues, the parties agreed to the proposed Settlement.  There was no collusion, nor is there any preferential treatment of Lead Plaintiff or any other Class Member.[5]

Accordingly, "the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation," provides ample proof that approval is appropriate.  *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003).

### C.    The Strength of Lead Plaintiff's Case Favors Approval

The Court "must consider 'whether the decision to settle is a good value for a relatively weak case or a sell-out of an extraordinarily strong case.'"  *Clesceri v. Beach City Investigations & Protective*

---

[5] The proposed Plan of Allocation, which is set forth in full in the Notice, provides formulas for calculating the recognized claim of each Settlement Class Member, based on each such person's purchases and sales of Impax's publicly traded common stock during the Class Period.  Lead Plaintiff will receive a distribution from the Net Settlement Fund based on the same formulas that apply to the recovery of all similarly situated members of the Class.

*Servs.*, No. CV-10-3873-JST (RZx), 2011 WL 320998, at *8 (C.D. Cal. Jan. 27, 2011) (quoting *Livingston v. Toyota Motor Sales USA, Inc.*, No. C-94-1377-MHP, 1995 U.S. Dist. LEXIS 21757, at *30 (N.D. Cal. June 1, 1995)).   While Lead Plaintiff believes it has a strong case against the Defendants, as noted below, it also recognizes the strength of Defendants' defenses and that it would have faced considerable obstacles over the course of continuing the Action.   Those obstacles weigh in favor of approving the Settlement.  *See, e.g.*, *Weeks v. Kellogg Co.*, No. CV 09-08102(MMM)(RZx), 2013 WL 6531177, at *13 (C.D. Cal. Nov. 23, 2013) (noting when "plaintiffs' ability to prove liability was somewhat unclear, this [factor] favors a finding that the settlement is fair").

### D.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation Favor Approval

The fairness of the Settlement is underscored by taking into account the difficulties and uncertainties that Lead Plaintiff and the Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation.  *See, e.g.*, *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d. 566, 575 (9th Cir. 2004) (citing "risk, expense, complexity, and likely duration of further litigation" as factors supporting final approval of settlement); *see also Orvis v. Spokane Cnty.*, 281 F.R.D. 469, 475 (E.D. Wash. 2012) ("[T]he proposed benefit to class members appears to the Court to be within the range of fair and reasonable compensation given the uncertain outcome of the legal arguments and the risks and probable delay for Plaintiff and class members if litigation were to proceed toward trial.").

If the Action were to continue, Lead Plaintiff and the Class would face the risk, expense, and delay inherent in litigating the case through Defendants' motions to dismiss, discovery, summary judgment motions, trial, and on appeal.   Despite Lead Plaintiff's confidence in the strength of its allegations, Lead Plaintiff recognizes that Defendants would vigorously contest the falsity and materiality of their challenged statements, the adequacy of the allegations supporting a strong inference of their scienter (as required under the PSLRA), and loss causation.  In particular, Defendants would likely argue that during the Class Period Impax was investing millions of dollars to address and remediate many of the FDA's Form 483 observations, thereby negating falsity and scienter.  Moreover, the risk that such arguments would resonate with the Court and a jury likely increased on January 8,

2015, when the FDA's approved RYTARY™, Impax's only late-stage proprietary drug in development, for treatment of Parkinson's disease.  *See* Levin Decl. Ex. 3.

In evaluating the uncertainties of adequately pleading and proving these elements, among others, Lead Plaintiff is mindful of a substantial body of recent Ninth Circuit decisions affirming on appeal the dismissal of securities class actions.[6]  Although Lead Plaintiff would argue that the facts of those cases are distinguishable and that it has adequately pled and could prove its claims, Defendants would strenuously argue that such recent cases raise the bar beyond Lead Plaintiff's reach.  There is a realistic risk that the Court or an appellate panel could view the Action in an unfavorable light.

In contrast, the Settlement results in an immediate and substantial tangible recovery that weighs in favor of granting preliminary approval.  *See, e.g.*, *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, MDL No. 551, 1988 WL 158947, at *4 (W.D. Wash. July 28, 1988) (finding settlement to be in the "best interests of the class . . . before it is subjected further to the vagaries of litigation").

### E.     The Stage of Proceedings Favors Approval

"[T]he stage of the proceedings and the amount of discovery completed" is another factor to be considered in evaluating a proposed settlement.  *Susquehanna Corp. v. Korholz*, 84 F.R.D. 316, 320 (N.D. Ill. 1979); *see also Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996).  Here, although the Parties propose to settle relatively early and prior to formal discovery, "[i]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."  *In re Mego Fin. Corp.*, 213 F.3d at 459 (alteration in original) (citation and internal quotation marks omitted).[7]

---

[6] For example, in *Police Retirement System of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051 (9th Cir. 2014), the Ninth Circuit held that "[p]roof under [the core operations] theory"—which Lead Plaintiff has invoked in its Complaint—"is not easy" and suffices only in "'rare circumstances.'"  *Id.* at 1062 (citation omitted); *see also Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 598 (9th Cir. 2014) (affirming failure "to adequately plead scienter or [loss] causation"); *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1046 (9th Cir. 2014) (affirming failure "to plead strong inference of scienter").

[7] Courts regularly approve settlements that are reached, as here, relatively early in litigation.  *See, e.g.*, *In re Mego Fin. Corp.*, 213 F.3d at 459 (finding that, even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval); *In re Critical Path, Inc.*, No. C 01-00551 WHA, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002) ("Through protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of

1

Here, prior to the Settlement, Lead Counsel had developed a thorough understanding of the fact

2

of the case and merits of the claims due to an extensive and thorough investigation including, *inter alia*:

3
4
5
6
7
8
9
10
11
12
13

> (i) review and analysis of filings made by Impax with the SEC; (ii) review and analysis of reports, forms, correspondence, handwritten notes, and other documents made by agents of the FDA; (iii) review and analysis of certain press releases, public statements, and other publication disseminated by Impax or concerning the Defendants named in the Action and related parties; (iv) review and analysis of transcripts of press conferences, analyst conference calls, and healthcare-industry conferences; (v) review and analysis of Impax's corporate website; (vi) review and analysis of securities analyst reports concerning the Company and its operations; (vii) review and analysis of certain other documents and materials concerning Impax and the other Defendants named in the Action, including pleadings and orders in other actions pending in the United States District Courts, newspaper articles, and trade periodicals; (viii) interviews with individuals possessing information concerning the subject matter alleged herein, including former Impax employees; (ix) information provided by two consulting experts regarding the FDA and Current Good Manufacturing Practices ("cGMP"); (x) documents obtained from Freedom of Information Act ("FOIA") requests; and (xi) information and analyses concerning Defendants' compliance obligations, as well as general information about FDA compliance, inspections, and enforcement.

Stipulation 2-3.

14

As a result of these efforts, as well as the mediation process before Judge Phillips, Lead

15

Plaintiff, through its counsel, had a comprehensive understanding of the Action and sufficient

16

information to make a well-informed decision regarding the fairness of the proposed settlement. *See In*

17

*re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 541 (D.N.J. 1997) ("Informal

18

discovery is perfectly adequate to substantiate claims."); *Redwen v. Sino Clean Energy, Inc.*, No. CV

19

11-3936 PA (SSx), 2013 U.S. Dist. LEXIS 100275, at *22 (C.D. Cal. July 9, 2013) (approving

20

settlement when "the parties have spent a significant amount of time considering the issues and facts in

21

this case and are in a position to determine whether settlement is a viable alternative"). Indeed, when,

22

as here, a party "obtained information about all the relevant issues" contemporaneously with settlement

23

negotiations, "it is not clear how formal discovery would have produced appreciable benefits to the

24

Court and to the parties that the informal discovery conducted by the parties did not bestow." *In re*

25

*AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 966 (N.D. Ill. 2011). Not

26

27

getting nothing."); *see also Glass v. UBS Fin. Servs., Inc.*, No. C 06-4068 MMC, 2007 WL 221862, at

28

*15 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly.").

NOTICE OF MOT. & LEAD PL.'S UNOPPOSED MOT. FOR PRELIM. APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT & MEM. OF P. & A. IN SUPP. THEREOF
Case No. 3:14-cv-03673-JD

11

only did Lead Plaintiff and Lead Counsel have a clear picture of the strengths and weaknesses of the case at the time of Settlement, but they also fully understood the various legal and factual defenses Defendants would likely raise if the Action were to continue.  Accordingly, this factor also supports preliminary approval.

### F.   The Amount Offered in Settlement Favors Approval

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."  *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 628 (9th Cir. 1988); *see also Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *3 (N.D. Cal. Feb. 2, 2009) ("The immediacy and certainty of the settlement award justifies a recovery smaller than the Class Members could seek in the case.").  Under the proposed Settlement, Defendants have agreed to pay $4,750,000.  *See* Stipulation § 2.  According to analyses prepared by Lead Plaintiff's consulting damages expert, the most likely aggregate damages the proposed class could have obtained at trial are estimated to be in the range of approximately $43.9-66.8 million, assuming that liability and loss causation for the alleged corrective disclosure were proven and based on various assumptions and modeling.  As such, the $4.75 million Settlement represents a gross recovery of approximately 7.1% to 10.8% of Lead Plaintiff's consulting expert's most likely estimated damages.  This percentage is well within the range of reasonableness approved by courts.  *See, e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (noting $13.75 million settlement yielding 6% of potential damages after deducting attorneys' fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (finding that a recovery representing 6.25% of damages was "at the higher end of the range of reasonableness of recovery in class actions securities litigations").

### G.   The Experience and Views of Counsel Favor Approval

The recommendation of experienced counsel in favor of settlement carries a "great deal of weight" in a court's determination of the reasonableness of a settlement.  *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007).  Therefore, "'[t]he recommendations of plaintiffs'

Notice of Mot. & Lead Pl.'s Unopposed Mot. for Prelim. Approval of
Proposed Class Action Settlement & Mem. of P. & A. in Supp. Thereof
Case No. 3:14-cv-03673-JD                                                                                      12

counsel should be given a presumption of reasonableness.'"  *Omnivision*, 559 F. Supp. 2d at 1043 (citation omitted).  In *Omnivision*, the court held that the recommendation of counsel weighed in favor of settlement because of counsel's familiarity with the dispute and their significant experience in securities litigation.  *Id.*

Here, Lead Counsel and their firm, Motley Rice LLC, have significant experience in securities and other complex class action litigation and have negotiated numerous other substantial class action settlements throughout the country.  *See* Firm Resume.  Under these circumstances, Lead Counsel's belief in the fairness and reasonableness of the proposed Settlement warrants a presumption of reasonableness.

## V.   THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AS WELL AS DUE PROCESS REQUIREMENTS

Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  The notice must describe "'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)).  The PSLRA further requires that "every settlement notice must include a statement explaining a plaintiff's recovery."  *In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 636 (S.D. Cal. 2008); *see also In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 969 (9th Cir. 2007).

Lead Plaintiff proposes to give interested parties notice in two ways:  (i) by first-class mail, addressed to all Class Members who can reasonably be identified and located; and (ii) by publication notice in *Investor's Business Daily*.  *See* Stipulation Exs. A & E.  Notice to the Settlement Class in the form and in the manner set forth in the proposed Preliminary Approval Order will fulfill the requirements of due process and comply with the Federal Rules of Civil Procedure and the PSLRA.

The form and substance of the notice program are sufficient.  The proposed forms of notice describe the terms of the Stipulation and the Class's recovery; the considerations that caused Lead Plaintiff and Lead Counsel to conclude that the Settlement is fair, adequate, and reasonable; the

maximum attorneys' fees and expenses that may be sought;[8] the procedure for requesting exclusion from the Class; the procedure for objecting to the Settlement; the procedure for participating in the Settlement and instructions on how to complete and submit a Proof of Claim to the Claims Administrator; the proposed Plan of Allocation for the settlement proceeds; and the date, time, and place of the Settlement Fairness Hearing. *See Ching v. Siemens Indus., Inc.*, No. C 11-4838 MEJ, 2013 WL 6200190, at *6 (N.D. Cal. Nov. 27, 2013) (approving notice that "adequately describes the nature of the action, summarizes the terms of the settlement, identifies the class and provides instruction on how to opt out and object, and sets forth the proposed fees and expenses to be paid to Plaintiff's counsel and the settlement administrator in clear, understandable language"). The Notice also provides contact information for Lead Counsel and counsel for Defendants, as well as information regarding the website created for the Settlement.

Lead Plaintiff also proposes that the Court appoint KCC Class Action Services ("KCC") as the claims administrator for the Settlement. KCC has been a claims administrator for more than twenty-five years and, during that time, has administered hundreds of securities class action settlements.[9] KCC has the experience to efficiently and accurately act as the claims administrator here. *See* Levin Decl. Ex. 4; *see also Knutson v. Schwan's Home Serv., Inc.*, No. 3:12-cv-00964-GPC-DHB, 2014 WL 3519064, at *5 (S.D. Cal. July 14, 2014) (appointing KCC as claims administrator and noting that "KCC specializes in providing administrative services for class-action litigation"). After consulting with KCC, Lead Counsel do not currently anticipate that the costs of notice and administration will exceed $150,000, but reserve the right to incur additional costs as may be necessary.

---

[8] The proposed Notice satisfies the requirements of Federal Rule of Civil Procedure 23(h)(1), as it notifies Class members that Lead Counsel will apply to the Court for attorneys' fees in an amount not to exceed twenty-five (25) percent of the total Settlement and for reimbursement of reasonable litigation expenses not to exceed $115,000, to be paid from the Settlement Fund. *See also Evans v. Linden Research, Inc.*, No. C-11-01078 DMR, 2014 WL 1724891, at *6 (N.D. Cal. Apr. 29, 2014) (noting "25% of the recovery obtained is the [fee] benchmark in the Ninth Circuit"); *Redwen*, 2013 U.S. Dist. LEXIS 100275, at *32 (C.D. Cal. July 9, 2013) (reimbursing "expenses for mediation fees, copying, telephone calls, expert expenses, research costs, travel, postage, messengers, and filing fees").

[9] Indeed, KCC currently serves as claims administrator in *Mulligan v. Impax Laboratories, Inc. See* No. 3:13-cv-01037-EMC (N.D. Cal.), ECF No. 119.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VI.   PROPOSED SCHEDULE OF EVENTS

If the Court grants preliminary approval to the proposed Settlement, Lead Plaintiff respectfully proposes the following schedule:

| EVENT | PROPOSED TIME FOR COMPLIANCE |
|---|---|
| Deadline for mailing the Notice and Proof of Claim to Class members ("Notice Date") | 30 calendar days after entry of the Preliminary Approval Order, attached as Exhibit C to the Stipulation |
| Deadline for publishing the Summary Notice | 14 calendar days after the Notice Date |
| Deadline for submitting Proofs of Claim and Release forms | 150 calendar days after the Notice Date |
| Deadline for filing papers in support of final settlement approval, plan of allocation, request for attorneys' fees, and reimbursement of expenses | 35 calendar days before the Settlement Fairness Hearing |
| Deadline for requesting exclusion from the Class or filing an objection to the Settlement, request for attorneys' fees, or request for reimbursement of expenses | 21 calendar days before the Settlement Fairness Hearing |
| Deadline for filing of reply memoranda in support of final settlement approval, plan of allocation, and request for attorneys' fees and reimbursement of expenses, and in response to any objections to the Settlement | 7 calendar days before the Settlement Fairness Hearing |
| Settlement Fairness Hearing | Approximately 110 calendar days after the Notice Date, or later at the Court's convenience |

## VII.   CONCLUSION

For the reasons set forth above, Lead Plaintiff respectfully requests that the Court provisionally certify the Class for settlement purposes, preliminarily approve the proposed Settlement, and enter the Preliminary Order.

Dated:  March 18, 2015                    Respectfully submitted,

                                          **MOTLEY RICE LLC**

                                           *s/ Gregg S. Levin*
                                          Gregg S. Levin (*pro hac vice*)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

William S. Norton
William P. Tinkler
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone:   (843) 216-9000
Facsimile:   (843) 216-9450
E-mail:       glevin@motleyrice.com
                  bnorton@motleyrice.com
                  wtinkler@motleyrice.com

**MOTLEY RICE LLC**
William H. Narwold (*pro hac vice*)
One Corporate Center
20 Church St., 17th Floor
Hartford, CT  06103
Telephone:   (860) 882-1681
Facsimile:   (860) 882-1682
E-mail:       bnarwold@motleyrice.com

*Lead Counsel for the Class*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2015, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 18, 2015.

       *s/ Gregg S. Levin*

       Gregg S. Levin (*pro hac vice*)
       **MOTLEY RICE LLC**
       28 Bridgeside Blvd.
       Mt. Pleasant, SC  29464
       Telephone:   (843) 216-9000
       Facsimile:   (843) 216-9450
       Email:      glevin@motleyrice.com