1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTLEY RICE LLC**
William H. Narwold (*pro hac vice*)
bnarwold@motleyrice.com
One Corporate Center
20 Church St., 17th Floor
Hartford, CT  06103
Telephone: (860) 882-1681
Facsimile: (860) 882-1682

**MOTLEY RICE LLC**
Gregg S. Levin (*pro hac vice*)
glevin@motleyrice.com
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450

*Lead Counsel for the Class*

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| LINUS ARULIAH, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IMPAX LABORATORIES, INC., LARRY HSU, G. FREDERICK WILKINSON, and BRYAN M. REASONS,<br><br>Defendants. | **No. 3:14-cv-03673-JD**<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:  The Honorable James Donato<br>Dept.:  Courtroom 11<br>Hearing Date:  October 28, 2015<br>Hearing Time:  10:00 a.m. |

Notice of Mot. & Mot. for Final Approval of Class Action
Settlement & Plan of Allocation & Mem. of P. & A. in Supp. Thereof
Case No. 3:14-cv-03673-JD

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ii

NOTICE OF MOTION AND MOTION ...................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ........................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 1

I.      PRELIMINARY STATEMENT ...................................................................................... 1

II.     HISTORY OF THE LITIGATION .................................................................................. 3

III.    SETTLEMENT NEGOTIATIONS .................................................................................. 4

IV.     PRELIMINARY APPROVAL AND THE NOTICE PROGRAM .................................. 5

V.      THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND MERITS FINAL APPROVAL........ 6

        A.      The Strength Of Lead Plaintiff's Case And Risks Associated With Continued
                Litigation ................................................................................................................ 8

        B.      The Expense And Likely Duration Of Further Litigation ................................... 9

        C.      The Risk Of Maintaining Class-Action Status Through Trial ........................ 10

        D.      The Amount Offered In Settlement ................................................................... 10

        E.      The Extent Of Discovery Completed And The Stage Of The Proceedings.......... 11

        F.      The Recommendations Of Experienced Counsel ............................................ 12

        G.      The Reaction Of Class Members To The Proposed Settlement ..................... 12

        H.      The Settlement Is Not The Product Of Collusion ............................................ 13

VI.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE
        APPROVED BY THE COURT ....................................................................................... 13

VII.    THE COURT SHOULD CERTIFY THE CLASS ......................................................... 14

CONCLUSION........................................................................................................................... 15

# TABLE OF AUTHORITIES

<u>Cases</u>

*Atlas v. Accredited Home Lenders Holding Co.*,
  No. 07-CV-00488-H (CAB), 2009 WL 3698393 (S.D. Cal. Nov. 4, 2009)................................. 13, 14

*Barbosa v. Cargill Meat Solutions Corp.*,
  297 F.R.D. 431 (E.D. Cal. 2013)................................................................................................. 6, 7

*Boring v. Bed Bath & Beyond of California Ltd. Liability Co.*,
  No. 12-cv-05259-JST, 2014 WL 2967474 (N.D. Cal. June 30, 2014)........................................ 14

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .................................................................................................... 6, 7

*Dura Pharmaceuticals, Inc. v. Broudo*,
  544 U.S. 336 (2005) ....................................................................................................................... 8

*Dyer v. Wells Fargo Bank, N.A.*,
  303 F.R.D. 326 (N.D. Cal. 2014) ................................................................................................. 13

*Eisen v. Porsche Cars North America, Inc.*,
  No. 2:11-cv-09405-CAS-FFMx, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ........................... 11, 13

*Evans v. Linden Research, Inc.*,
  No. C-11-01078 DMR, 2014 WL 1724891 (N.D. Cal. April 29, 2014) ........................................ 7

*Garner v. State Farm Mutual Automobile Insurance Co.*,
  No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .............................. 6

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ....................................................................................................... 7

*Hartless v. Clorox Co.*,
  273 F.R.D. 630 (S.D. Cal. 2011) ................................................................................................... 9

*In re American Apparel, Inc. Shareholder Litigation*,
  No. CV 10-06352 MMM (JCGx), 2014 WL 10212865 (C.D. Cal. July 28, 2014) .................... 10

*In re American Bank Note Holographics, Inc., Securities Litigation*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) .......................................................................................... 9

*In re Flag Telecom Holdings*,
  No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 5, 2010) ......... 8

*In re Global Crossing Securities & ERISA Litigation*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................................................. 14

*In re Heritage Bond Litigation*,
  No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .......................................... 13

*In re Immune Response Securities Litigation*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ......................................................................................... 8

*In re Mego Financial Corp. Securities Litigation*,
  213 F.3d 454 (9th Cir. 2000) .................................................................................................... 7, 10

Notice of Mot. & Mot. for Final Approval of Class Action
Settlement & Plan of Allocation & Mem. of P. & A. in Supp. Thereof
Case No. 3:14-cv-03673-JD

ii

*In re Merrill Lynch & Co. Research Reports Securities Litigation*,
No. 02 MDL 1484(JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ...................... 11

*In re Omnivision Technologies, Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................ 11, 12, 13

*In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litigation*,
364 F. Supp. 2d 980 (D. Minn. 2005) ........................................................................ 2

*Larsen v. Trader Joe's Co.*,
No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ................... 9

*Lilly v. Jamba Juice Co.*,
No. 13-cv-02998-JST, 2015 WL 2062858 (N.D. Cal. May 4, 2015)...................... 8, 12

*Linney v. Cellular Alaska Partnership*,
151 F.3d 1234 (9th Cir. 1998) ................................................................................. 11

*McPhail v. First Command Financial Planning, Inc.*,
No. 05cv179-IEG-JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ................... 11

*Mendoza v. Tucson School District No. 1*,
623 F.2d 1338 (9th Cir. 1980) ................................................................................... 6

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)........................................................................... 6, 12

*Officers for Justice v. Civil Service Commission*,
688 F.2d 615 (9th Cir. 1982) ..................................................................................... 6

*Pennsylvania v. eBay, Inc.*,
No. 5:12-cv-05874-EJD, 2015 WL 5168666 (N.D. Cal. Sept. 3, 2015) ................. 9

*Pierce v. Rosetta Stone, Ltd.*,
C 11-01283 SBA, 2013 WL 5402120 (N.D. Cal. Sept. 26, 2013) ........................ 12

*Ramirez v. Ghilotti Bros. Inc.*,
No. C 12-04590 CRB, 2014 WL 1607448 (N.D. Cal. April 21, 2014)..................... 7

*Redwen v. Sino Clean Energy, Inc.*,
No. CV 11-3936 PA (SSx), 2013 U.S. Dist. LEXIS 100275 (C.D. Cal. July 9, 2013)................... 8, 11

*Rieckborn v. Velti PLC*,
No. 13-cv-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015)...................... 11

*Satchell v. Federal Express Corp.*,
No. C03-2659 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .......................... 13

*Torrisi v. Tucson Electric Power Co.*,
8 F.3d 1370 (9th Cir. 1993) ....................................................................................... 7

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976) ..................................................................................... 6

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) ...................................................................................... 10

*Weeks v. Kellogg Co.*,
No. CV 09-08102(MMM)(RZx), 2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ................................. 9

NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT & PLAN OF ALLOCATION & MEM. OF P. & A. IN SUPP. THEREOF
CASE NO. 3:14-cv-03673-JD

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT at 10:00 a.m. on October 28, 2015, in the courtroom of the Honorable James Donato, in the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Lead Plaintiff KBC Asset Management NV will respectfully move, pursuant to Federal Rule of Civil Procedure 23(e), for entry of the [Proposed] Order and Final Judgment, ECF No. 63-2, approving the proposed Settlement and Plan of Allocation, certifying a class for settlement purposes, and finding that notice to the Class was provided as required and in a manner consistent with applicable legal standards.  This motion is based on the following Memorandum of Points and Authorities, as well as the accompanying Declaration of Gregg S. Levin in Support of (A) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan Of Allocation and (B) Lead Counsel's Motion for Attorneys' Fees and Reimbursement of Expenses ("Levin Declaration"), with attached exhibits.

### STATEMENT OF ISSUES TO BE DECIDED

(i)     Whether the proposed Settlement should be granted final approval.

(ii)    Whether the proposed Plan of Allocation of proceeds to the Class should be given final approval.

(iii)   Whether the Class should be certified for settlement purposes.

(iv)    Whether notice was provided to the Class in accordance with the Court's preliminary approval order and in a manner consistent with applicable law.

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.    PRELIMINARY STATEMENT**

Lead Plaintiff KBC Asset Management NV ("KBC" or "Lead Plaintiff"), respectfully submits this memorandum of points and authorities in support of its motion, pursuant to Fed. R. Civ. P. 23(e), for final approval of the settlement of this action (the "Action") on the terms set forth in the Stipulation of Settlement (the "Stipulation"),[1] ECF No. 63, dated May 27, 2015, which was preliminarily approved by the Court on June 22, 2015, *see* ECF No. 65.  The Settlement provides for

---

[1]     Capitalized terms not otherwise defined herein have the meanings given to them in the Stipulation.

the payment of $4,750,000 in cash on behalf of Defendants[2] and, if approved by the Court, will resolve this matter in its entirety.  The Settlement is the result of extensive arm's-length negotiations between the parties with the assistance of retired United States District Court Judge Layn R. Phillips, a highly respected and experienced mediator.  As discussed herein and in the Levin Declaration, Lead Plaintiff and its counsel ("Lead Counsel") have obtained an excellent result for the Class.[3]

This case was carefully investigated and vigorously litigated.  Defendants asserted strong defenses, adamantly denied liability, and were firm in their belief that Lead Plaintiff could not prevail.  While the case settled at a relatively early stage, a result consistent with the purposes of the Federal Rules of Civil Procedure,[4] Lead Counsel spent a considerable amount of time and resources on this case.  The Settlement was achieved only after Lead Counsel:  (i) conducted a thorough pre-filing investigation of Lead Plaintiff's claims; (ii) filed a detailed amended complaint; and (iii) prepared for and attended mediation with Judge Phillips.   Levin Decl. ¶¶ 6, 20, 36-40.   During settlement negotiations, Lead Plaintiff made it clear that, while it was prepared to fairly assess the strengths and weaknesses of its case, it would continue to litigate rather than settle for less than an amount that was in the Class's best interest.

The Settlement takes into account the specific risks and obstacles that Lead Plaintiff and the Class would face if litigation were to continue.  Lead Counsel are highly experienced in prosecuting securities class actions and have concluded that the Settlement is an excellent recovery.  This conclusion is based on, among other things, the substantial and certain recovery obtained when weighed against the significant risk, expense, and delay presented in continuing the Action through motion(s) to dismiss, discovery, class certification, motion(s) for summary judgment, trial, and

---

[2]      "Defendants" means Impax Laboratories, Inc. ("Impax" or the "Company"), Larry Hsu, G. Frederick Wilkinson, and Bryan M. Reasons.

[3]      The Court is respectfully referred to the accompanying Levin Declaration for a more detailed history of the Action, the extensive efforts of counsel, and the factors bearing on the reasonableness of the Settlement, Plan of Allocation of Settlement proceeds, and Lead Counsel's request for an award of attorneys' fees and expenses.

[4]      *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 992 (D. Minn. 2005) (noting early resolution of litigation is consistent with Rule 1 of the Federal Rules of Civil Procedure).

probable post-trial motions and appeal(s); a complete analysis of the facts adduced to date; past experience in litigating complex actions similar to the present action; and the serious disputes between the parties concerning the merits and damages. *Id*. ¶¶ 6, 23-35, 37-40, 59-69, 89.

Accordingly, Lead Plaintiff respectfully requests the entry of orders:  (i) finally approving the Settlement by entry of an order substantially in the form of the [Proposed] Order and Final Judgment, which was negotiated by the parties as an Exhibit to the Stipulation;[5] (ii) finding that notice to the Class was provided as required and to the satisfaction of due process and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §§ 78u-4 *et seq*.; (iii) finally certifying, for settlement purposes only, the Class of all non-excluded persons or entities who purchased or otherwise acquired shares of Impax's common stock between March 6, 2013 and August 1, 2014, inclusive, and were damaged thereby; (iv) appointing Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel; and (v) approving the Plan of Allocation for distributing the Net Settlement Fund.

## II.   HISTORY OF THE LITIGATION

This Action began on August 13, 2014, when an initial class action complaint alleging violations of the federal securities laws against Defendants, captioned *Aruliah v. Impax Laboratories, Inc. et al*., No. 3:14-cv-03673-JD, was filed in this Court.  By Order entered November 19, 2014, the Court appointed KBC as Lead Plaintiff and approved Lead Plaintiff's selection of William H. Narwold and Gregg S. Levin to serve as Lead Counsel.  ECF No. 44.

On December 10, 2014, Lead Plaintiff filed the Amended Class Action Complaint for Violation of the Federal Securities Laws (the "Complaint").  *See* ECF No. 48.  The Complaint was based upon counsel's extensive factual investigation, which included, among other things:  (i) review and analysis of filings Impax made with the U.S. Securities and Exchange Commission ("SEC"); (ii) review and analysis of reports, forms, correspondence, handwritten notes, and other documents made by agents of the U.S. Food and Drug Administration ("FDA"); (iii) review and analysis of certain press releases, public statements, and other publications disseminated by Impax or concerning

---

[5]     Because the October 7, 2015, deadline for exclusion requests has not passed, an updated [Proposed] Order and Final Judgment (annexing a table of all timely and valid exclusion requests) will be submitted to the Court together with Lead Plaintiff's reply papers in further support of approval of the Settlement.

the Defendants and related parties; (iv) review and analysis of transcripts of press conferences, analysis conference calls, and healthcare-industry conferences; (v) review and analysis of Impax's corporate website; (vi) review and analysis of securities analyst reports concerning the Company and its operations; (vii) review and analysis of certain other documents and materials concerning the Defendants, including pleadings and orders in other actions pending in the United States District Courts, newspaper articles and trade periodicals; (viii) interviews with individuals possessing information concerning the subject matter alleged herein, including former Impax employees; (ix) information provided by consulting experts in Current Good Manufacturing Practices ("cGMP"); (x) documents obtained from Freedom of Information Act requests; and (xi) information and analyses concerning the Company's compliance obligations, as well as general information about FDA compliance, inspections, and enforcement.  Levin Decl. ¶ 6.

The Complaint alleged that Defendants falsely claimed that Impax had made significant improvement in quality and cGMP compliance despite knowing of the Company's ongoing cGMP violations, which ultimately resulted in receipt of Impax's sixth and seventh reports of compliance deficiencies from the FDA in six years.  Compl. ¶ 11.  The Complaint further alleged, *inter alia*, that these misrepresentations rendered Defendants' Class Period public statements and the Company's periodic reports filed with the SEC materially false and misleading in violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder.  *Id*. ¶¶ 220-26. The Complaint also alleged that, as a result of Defendants' misrepresentations, the price of Impax's common stock was artificially inflated during the Class Period.  *Id*. ¶ 191.

## III.  SETTLEMENT NEGOTIATIONS

On November 19, 2014, this Court directed the parties to conduct settlement discussions at their earliest opportunity.  Accordingly, before Defendants answered Lead Plaintiff's Complaint or filed a motion to dismiss, the parties agreed to mediate this Action before Judge Phillips.  Levin Decl. ¶ 36.  As might be expected, prior to the mediation there were numerous issues about which the parties disagreed, including:  (i) whether the statements made or facts allegedly omitted were material, false, misleading, or actionable; (ii) whether Lead Plaintiff could prove that Defendants acted with scienter; and (iii) whether Lead Plaintiff could prove that Defendants' alleged misstatements caused investors'

NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT & PLAN OF ALLOCATION & MEM. OF P. & A. IN SUPP. THEREOF
CASE NO. 3:14-CV-03673-JD

4

losses.  *Id*. ¶¶ 25-34.   After an exchange of pre-mediation statements that detailed their respective positions, the parties attended a day-long mediation on December 22, 2014 before Judge Phillips.  *Id*. ¶¶ 38-39.   A settlement was not reached on that day; however, Lead Plaintiff and Defendants developed a better understanding of each other's positions.  *Id*. ¶ 39.  Settlement discussions involving Judge Phillips continued over the next several weeks, and on January 13, 2015, the parties reached an agreement-in-principle to settle the Action.  *Id*. ¶ 40.

## IV. PRELIMINARY APPROVAL AND THE NOTICE PROGRAM

On June 22, 2015, this Court granted preliminary approval to the Settlement and approved the Notice of Pendency and Proposed Settlement of Class Action ("Notice"), Proof of Claim and Release Form, and Summary Notice for dissemination to the Class.  Prelim. Approval Order, ECF No. 65.  The Court also approved KCC Class Action Services, Inc. ("KCC") as the Claims Administrator for the Settlement and set a hearing for October 28, 2015, at 10:00 a.m. (the "Settlement Fairness Hearing") to consider the fairness, reasonableness, and adequacy of the Settlement and the Plan of Allocation. *Id.*

In compliance with the Court's Preliminary Approval Order, under the supervision of Lead Counsel, KCC mailed Notice Packets, which included the Notice and Proof of Claim and Release Form, to:  (i) all potential members of the Class who could be reasonably identified; and (ii) known banks, brokerage firms, or other nominees who may have purchased Impax stock for the beneficial interest of individual investors.  *See* Aff. of Justin R. Hughes Regarding (a) Mailing of the Notice & Proof of Claim Form; (b) Publication of the Summary Notice; (c) Establishment of the Telephone Hotline; (d) Establishment of the Settlement Website; & (e) Report on Reqs. for Exclusion Received to Date ¶¶ 2-5 ("Mailing Aff.").   To date, KCC has mailed 23,881 Notice Packets to potential members of the Class and nominees.  *Id*. ¶ 6.  In addition, the Summary Notice was published in *Investor's Business Daily* and disseminated on PR Newswire, and the Notice and Proof of Claim and Release Form were posted at http://www.impaxaruliahsecuritiessettlement.com, along with other Settlement-related documents.  *Id.* ¶¶ 7, 9.

The Notice described, *inter alia*, the claims asserted in the Action, the contentions of the Settling Parties, the course of the litigation, the terms of the Settlement, the attorneys' fees request, the

NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT & PLAN OF ALLOCATION & MEM. OF P. & A. IN SUPP. THEREOF
CASE NO. 3:14-CV-03673-JD

5

Plan of Allocation, the right to object to the Settlement, and the right to seek to be excluded from the Class.  The Notice also gave the deadlines for objecting or seeking exclusion from the Class and advised potential Class Members of the scheduled Settlement Hearing before this Court.  Levin Decl. ¶ 45.  The Notice specifically notified Class Members that Lead Counsel's request for attorneys' fees would not exceed 25% of the Settlement Fund, plus accrued interest, and their request for reimbursement of expenses would not exceed $115,000, plus interest at the same rate as earned on the Settlement Fund.  *Id.*[6]

## V. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND MERITS FINAL APPROVAL

Strong judicial policy favors settlement of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  Indeed, "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013) ("[S]ettlement is encouraged in class actions where possible.").  Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  Settlements of complex cases such as this one greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of claims.  *See, e.g.*, *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("'Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.'").

---

[6]      The Ninth Circuit has held that notice must be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980).  Lead Plaintiff respectfully submits that the notice program utilized here readily meets this standard.  *See, e.g.*, *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (finding notice sufficient when, as here, it described background of case and terms of proposed settlement, and provided class members with "clear instructions about how to object").

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the compromise of claims brought on a class basis.  The standard for determining whether to grant final approval to a class action settlement is "whether a proposed settlement is fundamentally fair, adequate, and reasonable."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  The Ninth Circuit has provided the following framework for a court to determine whether a settlement is "fair, adequate, and reasonable" in a class action:

> "Assessing a settlement proposal requires a district court to balance a number of factors:  the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement."  *Hanlon*, 150 F.3d at 1026 (citations omitted). . . . In addition, the settlement may not be the product of collusion among the negotiating parties.  *Class Plaintiffs*, 955 F.2d at 1290.

*Mego Fin.*, 213 F.3d at 458 (first alteration in original).  Not all of these factors will apply to every class action settlement; under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval.  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

"[T]he settlement hearing is not meant to be conducted as a trial or rehearsal for trial on the merits."  *Barbosa*, 297 F.R.D. at 445.  "It is neither for the court to reach any ultimate conclusions regarding the merits of the dispute, nor to second guess the settlement terms."  *Evans v. Linden Research, Inc.*, No. C-11-01078 DMR, 2014 WL 1724891, at *3 (N.D. Cal. April 29, 2014).  Significantly, a strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the litigation.  *See, e.g.*, *Ramirez v. Ghilotti Bros. Inc.*, No. C 12-04590 CRB, 2014 WL 1607448, at *1 (N.D. Cal. April 21, 2014) ("When class counsel is experienced and supports the settlement, and the agreement was

NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT & PLAN OF ALLOCATION & MEM. OF P. & A. IN SUPP. THEREOF
CASE NO. 3:14-CV-03673-JD

7

reached after arm's length negotiations, courts should give a presumption of fairness to the settlement.").[7]  As discussed below, the proposed Settlement meets these standards and thus merits final approval.

### A.   The Strength Of Lead Plaintiff's Case And Risks Associated With Continued Litigation

Although Lead Plaintiff believes that the case it has developed to date against the Defendants is strong, that confidence must be tempered by the fact that the Settlement is extremely beneficial (providing a significant immediate return) and that there were significant risks of less or no recovery, particularly in a complex case such as this.  Levin Decl. ¶¶ 23-35.[8]

In order to prove liability under the Exchange Act, a plaintiff must prove, *inter alia*, that: (i) defendants were responsible for materially false or misleading representations entering the market; (ii) defendants acted with scienter (i.e., that defendants made their misrepresentations knowingly or recklessly); (iii) that plaintiff's losses were caused by defendants' misrepresentations (i.e., "loss causation"); and (iv) that plaintiff and the class members suffered damages.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).  In the case at bar, proving each of these requirements posed significant risks.  First, Defendants likely would argue that the alleged misrepresentations regarding Impax's remediation efforts were truthful because the Company had been devoting substantial resources to address the deficiencies observed by the FDA.  Levin Decl. ¶ 28.  Second, Lead Plaintiff faced significant risks in proving that the alleged misstatements were made with scienter, one of the most difficult elements to prove in securities actions.  *Id.* ¶¶ 29-32.  *See also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (approving settlement and recognizing that "issues of scienter . . . are complex and difficult to establish at trial").  Finally, Defendants likely

---

[7]   "The reasons for this presumption is that '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.'"  *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2015 WL 2062858, at *4 (N.D. Cal. May 4, 2015) (alteration in original).

[8]   In the context of approving class action settlements, "[c]ourts experienced with securities fraud litigation, routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear."  *Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSx), 2013 U.S. Dist. LEXIS 100275, at *19 (C.D. Cal. July 9, 2013) (quoting *In re Flag Telecom Holdings*, No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *48 (S.D.N.Y. Nov. 5, 2010)) (internal quotation marks omitted).

1    would argue that investors were adequately warned of the risks and thus that investors' losses were not

2    caused by the statements alleged by Lead Plaintiff to be false and misleading.   Levin Decl. ¶ 33.

3    These risks posed a significant threat of little or no recovery for the Class.[9]  *See, e.g.*, *Pennsylvania v.*

4    *eBay, Inc.*, No. 5:12-cv-05874-EJD, 2015 WL 5168666, at *4 (N.D. Cal. Sept. 3, 2015) ("Since a

5    negotiated resolution provides for a certain recovery in the face of uncertainty in litigation, this factor

6    weighs in favor of settlement."); *Weeks v. Kellogg Co.*, No. CV 09-08102(MMM)(RZx), 2013 WL

7    6531177, at *13 (C.D. Cal. Nov. 23, 2013) (noting when "plaintiffs' ability to prove liability was

8    somewhat unclear," that factor "favors a finding that the settlement is fair").

### B.    The Expense And Likely Duration Of Further Litigation

10       The expense and likely duration of further litigation provides strong support for approving the

11   Settlement.  Responding to a motion to dismiss, engaging in full-blown merits and class-certification

12   discovery, certifying a class, completing expert discovery, defending against summary judgment, and

13   preparing the case for trial would have required significant time and resources.  A trial of a complex,

14   fact-intensive case like this would have taken weeks and appeals of rulings on summary judgment or

15   trial likely would add years to the litigation.  Barring a settlement, there is no question that this case

16   would be litigated for many years, taking a considerable amount of court time and costing millions of

17   additional dollars, with the possibility that the end result would be no better for the Class, and might

18   even be worse.  Accordingly, this factor supports approval of the Settlement.  *See*, *e.g.*, *Larsen v.*

19   *Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) ("[T]he

20   high risk, expense, and complex nature of the case weigh in favor of approving the settlement.");

21   *Hartless v. Clorox Co.*, 273 F.R.D. 630, 640 (S.D. Cal. 2011) ("Considering these risks, expenses and

22   delays, an immediate and certain recovery for class members . . . favors settlement of this action.").

23

24

---

25   [9]    Moreover, even if the case were to make it to trial (an uncertain proposition), the existence and

26   amount of damages would be uncertain.  *See* Levin Decl. ¶ 34; *see also In re Am. Bank Note*
     *Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) (finding final approval

27   warranted when, *inter alia*, "the damage assessments of Plaintiffs' and Defendants' experts who would
     be called at trial were sure to vary substantially, thus precipitating a 'battle of the experts,'" thus

28   raising "the possibility that a jury could be swayed by experts for Defendants, who could minimize or
     eliminate the amount of Plaintiffs' losses").

### C.  The Risk Of Maintaining Class-Action Status Through Trial

Absent the Settlement, there would have been a contested motion for class certification.  Class-certification discovery would have been conducted and Defendants, without doubt, would have opposed the motion.  While Lead Counsel were confident that they would have presented a compelling motion for certification of a litigation class, the process would have added time and expense to the proceedings, and the outcome of such a contested motion was far from certain.  Moreover, throughout the remainder of the Action, as issues of loss causation and class-wide reliance were resolved and the law evolved, it is possible that Defendants would have sought to decertify any class certified by the Court.  *See, e.g.*, *In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352 MMM (JCGx), 2014 WL 10212865, at *11 (C.D. Cal. July 28, 2014) ("Because there was a risk that the court would not have certified a class in the first place had the parties not settled, and a further risk that, even if it did, that class might later have been decertified, this factor too weighs in favor of approving the settlement.").

### D.  The Amount Offered In Settlement

In evaluating the fairness of a settlement, a fundamental question is how the value of the settlement compares to the amount the class potentially could recover at trial, discounted for risk, delay, and expense.  In this regard, "'[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.'"  *Mego Fin.*, 213 F.3d at 459.  "[T]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 119 (2d Cir. 2005) (alteration in original).

Here, the proposed $4.75 million Settlement is well within the range of reasonableness in light of the most likely possible recovery at trial and the risks of continued litigation.  According to analyses prepared by Lead Plaintiff's consulting damages expert, the most likely aggregate damages the proposed class could have obtained at trial are estimated to be between $43.9 million and $66.8 million, assuming that liability and loss causation for the alleged corrective disclosure were proven and based on various assumptions and modeling.  Levin Decl. ¶ 7.  As such, the $4.75 million Settlement represents a gross recovery of approximately 7.1% to 10.8% of Lead Plaintiff's consulting expert's most likely estimated damages.  *Id.*  This percentage is within the range of reasonableness

Notice of Mot. & Mot. for Final Approval of Class Action
Settlement & Plan of Allocation & Mem. of P. & A. in Supp. Thereof
Case No. 3:14-cv-03673-JD

10

approved by courts.  *See, e.g.*, *McPhail v. First Command Fin. Planning, Inc.*, No. 05cv179-IEG-JMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding $12 million settlement recovering 7% of estimated damages to be fair and adequate); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (noting $13.75 million settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484(JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (finding recovery representing 6.25% of damages to be "at the higher end of the range of reasonableness of recovery in class actions securities litigations").

### E.     The Extent Of Discovery Completed And The Stage Of The Proceedings

The parties reached a settlement agreement early in the proceedings, a result consistent with the Federal Rules of Civil Procedure.  *See supra* Part I & n.4.  Because of the stay on discovery imposed by the PSLRA, Lead Plaintiff was unable to conduct formal discovery.[10]  However, Lead Plaintiff, through its counsel, conducted its own thorough factual investigation in connection with preparing the Complaint.  Levin Decl. ¶ 6.  As a result of these efforts, Lead Plaintiff and its counsel had a comprehensive understanding of the Action and sufficient information to make a well-informed decision regarding the fairness of the Settlement.  *See, e.g.*, *Rieckborn v. Velti PLC*, No. 13-cv-03889-WHO, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) ("Despite reaching settlement relatively early in the life span of this case, the Settling Parties have shown that their decision to settle was made on the basis of a thorough understanding of the relevant facts and law.  This factor weighs in favor of approval."); *Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-cv-09405-CAS-FFMx, 2014 WL 439006, at *4 (C.D. Cal. Jan. 30, 2014) (approving settlement when record established "all counsel had ample information and opportunity to assess the strengths and weaknesses of their claims and defenses"); *Redwen*, 2013 U.S. Dist. LEXIS 100275, at *22 (approving settlement when, as here, "the parties have spent a significant amount of time considering the issues and facts in this case and are in a position to determine whether settlement is a viable alternative").

---

[10]     "In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT & PLAN OF ALLOCATION & MEM. OF P. & A. IN SUPP. THEREOF
CASE NO. 3:14-CV-03673-JD

11

**F.    The Recommendations Of Experienced Counsel**

Experienced counsel, negotiating at arm's length, have weighed the factors discussed above and endorse the Settlement.  As courts have stated, the views of the attorneys who are actively conducting the litigation and "'most closely acquainted with the facts of the underlying litigation,'" are entitled to "[g]reat weight."  *Nat'l Rural Telecomms.*, 221 F.R.D. at 528; *see also In re Omnivision*, 559 F. Supp. 2d at 1043 ("'The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'").  Lead Plaintiff had the advice of Lead Counsel, who along with their firm, Motley Rice LLC, have significant experience in complex class actions.  Indeed, Lead Counsel and Motley Rice together have served as lead or co-lead counsel on behalf of major institutional investors in numerous securities class actions filed under the PSLRA.  That experience is further detailed in the Levin Declaration.  Levin Decl. ¶¶ 77-78 and Exs. 7 & 8.  Based on their knowledge of the law, their experience, their investigation, and their consultation with experts in this litigation, Lead Counsel believe that the Settlement is a very favorable result which is in the best interests of the Class.  Accordingly, this factor strongly weighs in favor of the Settlement.  *See, e.g.*, *Pierce v. Rosetta Stone, Ltd.*, C 11-01283 SBA, 2013 WL 5402120, at *5 (N.D. Cal. Sept. 26, 2013) ("Given the collective experience of the attorneys involved in this litigation, the Court credits counsels' view that the settlement is worthy of approval."); *Lilly*, 2015 WL 2062858, at *4 (finding "class counsel's endorsement weighs in favor of approving the settlement" when counsel "demonstrated their experience in litigating similar . . . class actions . . . and demonstrated that they are well informed of the facts, claims, and defenses in [the] action").

**G.    The Reaction Of Class Members To The Proposed Settlement**

The Class's reaction to the proposed Settlement upon receipt of the Notice approved by this Court has been extremely positive.  This reaction is an indication of the Class's overwhelming satisfaction with the result achieved.  While the date to opt-out from or object to the Settlement— October 7, 2015—has not yet passed, to date there have only been two requests for exclusion from the proposed Settlement.  Mailing Aff. ¶ 10.  Further, while the objection deadline has not yet passed, to date no Class Member has submitted an objection.  Notably, no public pension fund or institutional investor has yet opted out of or objected to any aspect of the Settlement, the Plan of Allocation, or the

Notice of Mot. & Mot. for Final Approval of Class Action
Settlement & Plan of Allocation & Mem. of P. & A. in Supp. Thereof
Case No. 3:14-cv-03673-JD                                                                                          12

attorneys' fee request.[11]  "The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the settlement are favorable to the class members." *Eisen*, 2014 WL 439006, at *5; *see also Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 332 (N.D. Cal. 2014) ("Given the lack of objections and few opt-outs, the settlement appears favorable to class members.").  Accordingly, this factor also supports approval of the Settlement.

### H.    The Settlement Is Not The Product Of Collusion

The weeks-long mediation process, facilitated by Judge Phillips, demonstrates that the Settlement is the result of hard-fought and arm's-length negotiations.  Levin Decl. ¶¶ 39-40.[12]  Indeed, as courts in this district and elsewhere have found, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."  *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also Eisen*, 2014 WL 439006, at *5 ("[W]here the services of a private mediator are engaged, this fact tends to support a finding that the settlement valuation by the parties was not collusive.").

For all of the foregoing reasons, Lead Plaintiff respectfully urges the Court to grant final approval of the Settlement.

### VI.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

The standard of approval for a plan of allocation in a class action under Rule 23 of the Federal Rules of Civil Procedure is the same standard "'applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate.'"  *Omnivision*, 559 F. Supp. 2d at 1045.  "'[A]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.'"  *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005).  Here, Lead Counsel prepared the Plan of Allocation

---

[11]    All objections that are received by Lead Counsel will be addressed in Lead Plaintiff's reply papers, which, pursuant to the Preliminary Approval Order, ECF No. 65, are due to be filed no later than seven days prior to the Settlement Fairness Hearing.

[12]    *See Atlas v. Accredited Home Lenders Holding Co.*, No. 07-CV-00488-H (CAB), 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009) ("The settlement negotiations were also fair.  They were closely supervised by the Honorable Layn Phillips (Ret.) and conducted at arm's length by experienced and competent counsel.").

1  after careful consideration and with the assistance of a consulting damages expert.  Levin Decl. ¶ 52.

2  The Plan of Allocation was fully disclosed in the Notice that was mailed to potential Class Members

3  and nominees, and, as of the filing of this motion, not a single Class Member has filed an objection to

4  it.  *Id.* ¶¶ 49, 51.  *See also Atlas*, 2009 WL 3698393, at *4 (noting a "predominantly positive response"

5  to plan of allocation when only two objections submitted).

6       The Plan of Allocation ensures an equitable *pro rata* distribution of the Net Settlement Fund

7  among Authorized Claimants based on their respective recognized losses.  Lead Plaintiff submits that

8  the Plan of Allocation, which was described in detail in the Notice, is fair, reasonable, and adequate

9  and should be approved.  *See, e.g.*, *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462

10 (S.D.N.Y. 2004) ("Pro-rata distribution of settlement funds based on investment loss is clearly a

11 reasonable approach.").

12 **VII.  THE COURT SHOULD CERTIFY THE CLASS**

13      In presenting the proposed Settlement to the Court for preliminary approval, Lead Plaintiff

14 requested that the Court preliminarily certify the Class for settlement purposes so that notice of the

15 proposed Settlement, the final approval hearing and the rights of Class Members to request exclusion,

16 object, or submit proofs of claim could be issued.  In its Preliminary Approval Order, entered on June

17 22, 2015, this Court also preliminarily certified the Class.  *See* ECF No. 65.  Nothing has changed to

18 alter the propriety of the Court's certification and no potential Class Member has objected to class

19 certification.  Accordingly, and for all the reasons stated in support of Lead Plaintiff's Unopposed

20 Motion for Preliminary Approval of Proposed Class Action Settlement, ECF No. 55, incorporated

21 herein by reference, Lead Plaintiff now requests that the Court:  (i) finally certify the Class for

22 purposes of carrying out the Settlement pursuant to Fed. R. Civ. P. 23(a) and (b)(3); (ii) appoint Lead

23 Plaintiff as Class Representative; and (iii) appoint Lead Counsel as Class Counsel.  *See, e.g.*, *Boring v.*

24 *Bed Bath & Beyond of Cal. Ltd. Liab. Co.*, No. 12-cv-05259-JST, 2014 WL 2967474, at *2 (N.D. Cal.

25 June 30, 2014) ("For the reasons discussed in the Court's Preliminary Approval Order, the Court finds

26 that the requirements for certification of the conditionally certified settlement class have been met, and

27 that the appointment of . . . Class Representative and . . . Class Counsel is proper.").

28

## CONCLUSION

The Settlement achieves substantial benefits for the Class, and is reasonable, fair, and adequate under any standard, but particularly when the risks, complexity, and likely duration of further litigation are considered.  Lead Plaintiff and Lead Counsel support the Settlement after thorough investigation of the facts and the law and careful consideration of both the risks and the benefits. Judging by the lack of objections and exclusion requests to date, the reaction of the Class to the Settlement has been very positive.  Accordingly, for the reasons set forth above, Lead Plaintiff respectfully requests that the Court:  (i) grant final approval of the Settlement; (ii) find that notice to the Class was provided as required and to the satisfaction of due process and the PSLRA; (iii) finally certify the Class; (iv) appoint Lead Plaintiff as Class Representatives and Lead Counsel as Class Counsel; and (v) approve the Plan of Allocation as fair, reasonable and adequate.

Dated:  September 22, 2015                Respectfully submitted,

**MOTLEY RICE LLC**

  _/s/ Gregg S. Levin_____
Gregg S. Levin (*pro hac vice*)
William S. Norton
William P. Tinkler
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone:  (843) 216-9000
Facsimile:  (843) 216-9450
E-mail:    glevin@motleyrice.com
              bnorton@motleyrice.com
              wtinkler@motleyrice.com

**MOTLEY RICE LLC**
William H. Narwold (*pro hac vice*)
One Corporate Center
20 Church St., 17th Floor
Hartford, CT  06103
Telephone:  (860) 882-1681
Facsimile:   (860) 882-1682
E-mail:     bnarwold@motleyrice.com

*Lead Counsel for the Class*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2015, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 22, 2015.

<div style="margin-left:40%">

*s/ Gregg S. Levin*

Gregg S. Levin (*pro hac vice*)
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone:   (843) 216-9000
Facsimile:   (843) 216-9450
Email:       glevin@motleyrice.com

</div>